# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION

## CIVIL CASE NO. 2:11cv41

| | |
|---|---|
| TINA W. POWELL, | ) |
| Plaintiff, | ) |
| vs. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OF DECISION AND ORDER

**THIS MATTER** is before the Court on the Plaintiff's Motion for Judgment on the Pleadings [Doc. 11] and the Defendant's Motion for Summary Judgment [Doc. 13].

## PROCEDURAL HISTORY

On October 2, 2007, the Plaintiff applied for disability benefits, and on October 30, 2007, she applied for supplemental security income alleging an onset date of October 1, 2005 and disability due to Hepatitis C, swelling of legs and feet, depression, chronic fatigue, back pain, bronchitis, constipation and headaches. [Administrative Transcript (Tr.) 71, 111-125].

The claims were denied on March 21, 2008 and again on June 30, 2008 after reconsideration. [Tr. 71; 81].

On August 12, 2008, after obtaining counsel, the Plaintiff requested a hearing before an Administrative Law Judge (ALJ). [Tr. 65]. A hearing was held on October 20, 2009 at which time testimony was received from the Plaintiff as well as a vocational expert. [Tr. 24-44]. The ALJ issued a decision on February 23, 2010 in which she denied the Plaintiff's applications. [Tr. 11-20]. Although the Plaintiff requested that the Appeals Council review the ALJ's decision, it denied review on August 8, 2011 thus rendering the ALJ's decision the final decision of the Commissioner. [Tr. 1-4]. The Plaintiff timely sought judicial review by filing this action on October 7, 2011.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes federal courts to review the Commissioner's denial of social security benefits.

> Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. In reviewing for substantial evidence, [this Court does] not undertake to reweigh conflicting

evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].

Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) superseded by regulation on other grounds 20 C.F.R. §416.927(d)(2)).

> The Commissioner uses a five-step process to evaluate disability claims. Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy. The claimant has the burden of production and proof in Steps 1-4. At Step 5, however, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering h[er] age, education, and work experience. If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps.

Hancock v. Astrue, 667 F.3d 470, 472-73 (4th Cir. 2012) (internal quotations and citations omitted).

Rather than separately stating the applicable facts, the Court will incorporate those facts into the legal analysis.

## DISCUSSION

In this case, the ALJ found at Step 1 that the Plaintiff has not engaged in substantial gainful activity since her alleged onset date. [Tr.

16]. Although the Plaintiff had worked after her alleged onset date, the ALJ found that activity did not rise to the level of substantial gainful activity. [Id.]. At Step 2, the ALJ found that the Plaintiff has severe impairments of low back pain with radiculopathy, Hepatitis C, depression and cirrhosis of the liver. [Id.]. The ALJ determined at Step 3 that the Plaintiff does not have impairments or a combination thereof that meets or equals any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 16-17]. The ALJ then determined that the Plaintiff retains the Residual Functional Capacity (RFC)[1] to perform medium unskilled work; that is, she can perform work requiring no more than simple, routine, repetitive tasks and instructions and can frequently lift or carry objects weighing no more than twenty-five pounds at the time; occasionally lift or carry objects weighing up to fifty pounds at the time; and can sit, stand or walk six hours in an eight hour day.[2] [Tr. 17]. Based on these conclusions, the ALJ found that the Plaintiff is capable of performing her past relevant work as a food service attendant. [Tr. 20]. In reaching this conclusion, the ALJ considered the testimony of a vocational expert. [Id.]. Because the ALJ found that the

---

[1] RFC is defined by the Social Security Regulations as the most that an individual is able to do despite his or her impairments. 20 C.F.R. §§404.1545(a), 416.945(a).

[2] See 20 C.F.R. §§404.1568(a) (defining unskilled work) and 404.1567(c) (defining medium work).

4

Plaintiff can perform her past relevant work, she did not proceed to Step 5.

The Plaintiff's first assignment of error is that the ALJ improperly evaluated her RFC because the ALJ did not find her condition of chronic fatigue to be debilitating. The ALJ made the following finding:

> I find the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The claimant's allegations of being drug-free for four or five years is contradicted by the evidence which indicates that the claimant has been drug-free for a significantly shorter period of time. This damages her credibility. Additionally, the medical evidence does not support the debilitating level of fatigue alleged by claimant.

[Tr. 19].

The Plaintiff testified at the October 2009 hearing that she received weekly methadone treatment, including drug testing, in Waynesville, North Carolina. [Tr. 32-33]. She testified that she had been receiving that treatment for a ten year period although she admitted that in 2004 she relapsed and was terminated from treatment for a one year period. [Id. at 33]. The Plaintiff testified that she had been back in treatment for four years. [Id.]. Although she was not specifically asked how long she had been drug free, Plaintiff's testimony that she had been in methadone

5

treatment for the four year period prior to October 2009, implied that she was drug free for that period.

The Plaintiff's medical records show that as early as November 2001, she had been in methadone treatment after being arrested for driving under the influence of narcotics and for possession of drug paraphernalia. [Tr. 201]. A medical record from August 2005, contains her report of being on methadone maintenance for about fifteen years, "status post former heroin abuse." [Tr. 215]. In January 2008, the Plaintiff reported drug use in December 2007 and the use of Xanax on January 29, 2008. [Tr. 336]. On March 14, 2008, the Plaintiff was assessed at the Smoky Mountain Center as part of her requirements for receiving methadone treatment. [Tr. 222-223]. At that time, she reported a fifteen year history of methadone treatment and identified her drugs of choice as IV morphine and dilaudid. [Id.]. As of that date, March 14, 2008, the Plaintiff reported that she had been drug-free for ninety days, noting her last use of injected drugs in January 2008. [Tr. 224]. The Plaintiff tested positive for drug use on July 10, 2008. [Tr. 335]. Despite this positive test, the Plaintiff reported to her gastroenterologist on July 16, 2009, that she had last used drugs "approximately 6 years ago." [Tr. 379].

The Plaintiff's medical records show that her testimony at her hearing

was not accurate; thus, the ALJ's conclusion that her credibility had been "damaged" was not erroneous. This Court does not "undertake to … make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Hancock, 667 F.3d at 472 (internal quotation and citation omitted). As a result, the Plaintiff's assignment of error in this regard must be rejected.

The Plaintiff's second assignment of error is to the ALJ's conclusion that the medical evidence does not support the debilitating level of fatigue reported by the Plaintiff. The Plaintiff is correct that the medical records contain reports by her about fatigue. However, the reports cited by the Plaintiff did not relate exclusively to her condition of hepatitis. [Tr. 259 (reported back pain but no fatigue attributed to hepatitis); 273 (sinusitis); 284 (fatigue attributed to back pain and depression as well as hepatitis); 286 (lab results – no reports of fatigue); 325 (intake for opioid treatment reported fatigue not attributed to hepatitis); 370-371 (complained of fatigue among six other ailments); 379-380 (complained of fatigue among six other ailments). "[T]he Act and regulations require that an impairment be established by objective medical evidence that consists of signs, symptoms, and laboratory findings, and not only by an individual's statement of symptoms[.]" Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001). The Plaintiff bears the burden of producing substantial evidence.

She has not, however, cited to any opinion by either a treating or consulting medical source in which her fatigue was found to be disabling. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). In fact, Dr. Amy Rehfield, who provided a consultative examination report, opined that the Plaintiff's impairment is mild. [Tr. 259-262]. Dr. Robert Pyle, another consulting medical source, did not find the Plaintiff's allegations of impairments to be fully credible. [Tr. 322]. After a thorough discussion of the Plaintiff's allegations, treatment records and consultative examination reports, the ALJ found that the objective medical evidence did not support the level of fatigue that she reported. Hancock v. Astrue, 2012 WL 1267888 **5 (M.D.N.C. 2012) (claimant must come forward with objective medical evidence of the impairment and of its severity). The Plaintiff's "statements regarding the severity of [her] impairment [are] not sufficient." Id.; Young v. Astrue, 2013 WL 474787 **9 (M.D.N.C. 2013).

Moreover, to the extent that the Plaintiff's testimony is contradicted, or there is conflicting evidence, this Court must defer to the Commissioner's decision. Jackson v. Astrue, 467 Fed. App'x. 214 (4th Cir. 2012). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Hancock, 667 F.3d at 472. It is not the role of this Court to

draw different conclusions from the evidence; the duty of resolving conflicts in the evidence belongs to the ALJ. Id.

The Plaintiff's final assignment of error is to the ALJ's evaluation of the opinion evidence of Pamela Baker (Baker) and Dr. Karen Marcus (Marcus). On March 14, 2008, Baker[3] prepared a Combined Basic Assessment of the Plaintiff for the Smoky Mountain Center "as part of the requirements for Methadone" treatment. [Tr. 222-223]. Based on the Plaintiff's reports to Baker during this assessment, Baker assigned the Plaintiff a Global Assessment of Functioning (GAF) of 45.[4] [Tr. 227]. The ALJ considered Baker's GAF assessment but gave it less weight because it was provided during an initial assessment by Baker rather than during an established treatment relationship. [Tr. 18]. The Plaintiff argues that the ALJ thus "simply cast[ ] it off as being based on a one time examination and therefore not reliable." [Doc. 12 at 11]. This treatment, she argues, "flies in the face of the regulations[.]" [Id.].

---

[3] Although not clear, it appears that Baker was a licensed social worker. "Licensed clinical social workers are medical sources who do not fall within the Commissioner's list of acceptable medical sources." Foster v. Astrue, 826 F.Supp.2d 884, 886 (E.D.N.C. 2011) (citing 20 C.F.R. §§404.1513(d) & 416.913).

[4] The GAF scale ranges from 0 to 100 based on psychological, social and occupational functioning on a hypothetical continuum of mental health illness. Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. Text Rev. 2000). A GAF score of 45 indicates that the person has serious symptoms or serious impairment in social, occupational or school functioning. Id.

Contrary to the Plaintiff's argument, however, the social security regulations state that a medical source opinion that is based on a limited, brief provider relationship militates in favor of granting such opinion limited weight. 20 C.F.R. §404.1527(d)(2)(i)-(ii). The ALJ here did not refuse to consider Baker's GAF score, she merely gave it less weight due to the fact that it was provided during an initial visit. Moreover, a GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning." White v. Comm'r of Soc. Sec., 572 F.3d 272, 276 (6th Cir. 2009). It is, in other words, a "snapshot of functioning at any given moment." Fowler v. Astrue, 2011 WL 5974279 **3 (W.D.N.C. 2011). "A GAF score is thus not dispositive of anything in and of itself" and has no direct legal or medical correlation to the severity requirements of social security regulations. Oliver v. Comm'r of Soc. Sec., 415 Fed. App'x. 681, 684 (6th Cir. 2011). It is, instead, intended to be used to make treatment decisions. Leovao v. Astrue, 2012 WL 6189326 **5 (W.D.N.C. 2012) (citing Wilkins v. Barnhart, 69 Fed. App'x. 775, 780 (7th Cir. 2003). The Court finds no error in the weight assigned to Baker's GAF assessment by the ALJ.

On August 20, 2009, the Plaintiff was evaluated by Marcus as an independent psychological examiner. [Tr. 452-462]. Marcus opined that

the Plaintiff's "problems with depression are likely to contribute to poor work consistency both in performance and attendance." [Tr. 362]. The ALJ discussed Marcus' opinion at length, noting her conclusions and diagnosis. [Tr. 19]. She determined, however, that it should not be given "controlling weight as it resulted from a one-time interview and was inconsistent with other evidence of record including claimant's demonstrated ability to perform substantial gainful activity." [Id.].

Plaintiff's counsel claims that the ALJ's treatment of Marcus' opinion is "hypocritical" because the ALJ gave substantial weight to the opinions of the state agency physicians who at no time examined the Plaintiff. Counsel completely overlooks the ALJ's actual assessment of weight. "In the case of a consultative source, the ALJ has [wide] discretion, since only a treating source's opinion is entitled to controlling weight." Id. (citing 20 C.F.R. §§404.1527(d) & 416.927(d)). The ALJ specifically noted that Marcus was not a treating medical provider. The evaluation provided by Marcus was a "one-time, attorney-referred consultative opinion." Baker v. Astrue, 2012 WL 517541 **6 (W.D.Va. 2012). Likewise, the state agency physicians were not treating physicians, and thus their opinions were not entitled to

controlling weight either.[5]  The other evidence in the record demonstrates Plaintiff's ability to perform substantial gainful activity, and this support the opinions of the state agency physicians rather than Marcus'. [Tr.19] "Where the opinion of a non-examining state agency physician is consistent with the record it can be relied upon." Rose v. Astrue, 2012 WL 6026473 **6 (E.D.Va. 2012).  Here, the ALJ stated that the "opinions [of the consultative examiners] are given substantial weight as they are consistent with the evidence." [Tr. 19].  The Plaintiff's assignment of error is therefore rejected.  Rose, 2012 WL 6026473; Moore v. Astrue, 2012 WL 5906691 **15 (N.D.W.Va. 2012); Arthur v. Astrue, 2012 WL 4890374 **9 (D.S.C.

---

[5] The Plaintiff does not assign as error the ALJ's consideration of the opinions of two state agency physicians. [Doc. 12 at 11-12]. Instead, she claims that it was "hypocritical" to provide any weight to the opinions of these non-examining physicians whose opinions were based on "NONE" of the Plaintiff's records. [Id.]. Counsel should be aware that use of such hyperbole does nothing to strengthen her arguments.

     W.H. Perkins, Ph.D. provided a Psychiatric Review Technique of the Plaintiff on June 20, 2008. [Tr. 297-309]. He stated that his assessment was from October 1, 2005 through June 17, 2008. [Tr. 297]. He stated that he reviewed records related to the Plaintiff's mental health with the following dates: November 2001, October 2007, February 2008, March 2008 and April 2008. [Tr. 309].

     Dr. Robert Pyle provided a Physical Residual Functional Capacity Assessment for the Plaintiff on June 2, 2008. [Tr. 315-322]. He noted that a treating or examining source's statement concerning the Plaintiff's physical capacities was in the file that he reviewed. [Tr. 321]. He also referenced medical records from the following dates: April 2003, August 2005, March 2006, April 2007, August 2007, October 2007, and February 2008. [Tr. 322].

     The Plaintiff's claim that these physicians reached their opinions without considering any underlying records is refuted by the record. "The ALJ was required to consider the opinion[s] of this 'highly qualified' psychologist [and physician] who [are] 'expert[s]' in Social Security disability evaluations." Geiger v. Astrue, 2013 WL 317564 **6 (W.D.Va. 2013).

2012).

It is unclear whether the Plaintiff means to assign as error the failure of the ALJ to find that chronic fatigue was a severe impairment. Nonetheless, even if the ALJ did err by failing to find it to be a severe impairment, it is of no moment. "Where an ALJ has already determined that a plaintiff suffers from at least one severe impairment, any failure to categorize an additional impairment as severe generally cannot constitute reversible error, because, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation." Young, 2013 WL 474787 **10 (internal quotation and citations omitted); Jones v. Astrue, 2009 WL 455414 (E.D.N.C. 2009). Such was the case here since the ALJ considered the Plaintiff's severe impairments of low back pain with radiculopathy, Hepatitis C, depression and cirrhosis of the liver and continued with the sequential evaluation process. [Tr. 22-23, 25, 30]. "Under such circumstances, any alleged improper application of law at step two caused Plaintiff no prejudice." Young, 2013 WL 474787 **10 (citing Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007)) (other citations omitted).

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Judgment on the Pleadings [Doc. 11] is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 13] is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **AFFIRMED** and this case is hereby **DISMISSED**.

The Clerk of Court is instructed to enter Judgment.

Signed: February 26, 2013

Martin Reidinger
United States District Judge